Good morning, Your Honors. I may please the Court. Carlos Castro on behalf of the Petitioner and Mr. Humbald Khan. With me today is Jessica Atwood and Professor Evangeline Abreu. At this time, I would like to reserve two minutes for rebuttal. Thank you. And I understand your co-counsel may take a few minutes here. It's all up to you all to figure out how you're going to do that. Yes, Your Honor. I will be taking eight minutes of our time, five for our co-counsel, and two minutes for rebuttal. Thank you. Just make sure you actually do a tag off so that we know. We'll do. Your Honors, we ask that the Court reverse and remand the BIA's affirmance of the IJ's decision to deny Mr. Khan his application for asylum, withholding removal, and convention against torture relief. The Board affirmed the IJ's decision of adverse credibility determination on four grounds. The focal point being Mr. Khan's correction of a date from April to June on the first information report located on pages 293 to 295 of the record. This adverse credibility determination was not supported by substantial evidence for several reasons. First, it was an—and the change of the date from April to June was an utterly trivial inconsistency that did not materially change the sequence of events that led Mr. Khan to flee Pakistan. Was it—it did seem more than trivial, right? Because I think he changed the date to then line up with the time in which he left Pakistan. Your Honor, I—we believe that actually the opposite is true. It actually weakened his claim because the crux of Mr. Khan's claim is that he received the threatening letter in January of 2016 and then had a shooting occur at his home. Now, the date—the change of date between April and June made actually the correlation between the threatening— his receipt of the threatening letter in January with the shooting far more difficult to prove. Furthermore, this was a—the change of the date was clear and obvious for whoever— for anyone reading the document that the change had been made. Mr. Khan never intended to mislead the court. This obviousness distinguishes Mr. Khan's case from Valdez-Munoz's beholder because there the—there was no dispute that the petitioner had in fact intended to mislead the court and attempted to do so with a fraudulent document. I guess I did look at the document. It wasn't that obvious to me that the change had been made, and so it ended up coming out at the hearing, but I'm not sure I agree that it was a transparently obvious change just on the face of the document. Well, Your Honor, the—Mr. Khan made the—the correction on both the original and the translation, so it appeared on several documents, and when asked about it for the first time, because he was pro se at this hearing, he was very forthright about it and has stayed true to the fact that he genuinely believes that the correct date was in fact June. For these reasons, the IJA's adverse credibility determination on this point was not supported by substantial evidence. Now, beyond all that, the IJA and the BIA in this case failed to consider the totality of circumstances as well as all relevant evidence in making this credibility determination. This also raises a due process issue because this court held in La Rita Martinez that a noncitizen's due process rights may be violated if the agency fails to consider all relevant evidence. So what evidence, Mr. Kassar, do you think the IJA did not consider? Your Honor, for your reference, we provided the court with a chart of the exhibits on pages 29 to 31 of our opening brief. We are particularly concerned with the first information report, Mr. Khan's mother's letter, the letter from Mr. Muhammad Tariq, as well as the police report and Mr. Khan's request for police assistance and then the police's refusal to assist him. Now, for several of these documents, the IJA refused to admit them into evidence because Mr. Khan had failed to provide proper certifications of translations. However, Mr. Khan did provide certification of translations that substantially complied with the regulation. Which documents, which specific documents do you say were disallowed, were not considered at all because of this translation issue? Your Honor, the mother's letter, Mrs. Parveen's letter, Mr. Muhammad Tariq's letter, the first information report, the request to the police and the police's response. At least some of these, though, if they weren't formally admitted, it does seem that they were in fact considered because the IJA actually goes through and discusses those. So how does that affect your argument? Yes, Your Honor. Well, he mentions the document, but only to discuss why he didn't consider them. For example, in Mr. Muhammad Tariq's letter, he says that Mr. Muhammad Tariq's letter failed to corroborate the shooting that took place at Mr. Khan's home. However, Mr. Khan never testified that the sole purpose of this letter was to corroborate the shooting. In fact, it actually corroborated key points of Mr. Khan's testimony, including the fact that he was deeply involved with his political party and that he had received threats from the ANP. That may be, but I guess the lead-in here was that the letter hadn't been considered, and it did seem that the IJA had that letter in front of him, and whether or not it was in fact formally admitted under the processes that they have there, there is a discussion of the letter that you're referring to. And so he may not have read the letter in the way that you maybe would have preferred, but it does seem that it was considered. Well, Your Honor, putting aside the fact that he marked for identification only several of these documents, as it pertains to the mother's letter, the IJA was very clear that Mr. Khan has shown to be undeserving of the benefit of the doubt as to the probative value for his mother's letter. This is contrary to this Court's requirement that an IJA not solely cherry-pick facts that favor an adverse credibility determination while ignoring facts that undermine that result. Furthermore, as it pertains to the certification translations, the IJA alerted Mr. Khan of the deficiencies for the first time at the May 2, 2017 hearing. He had almost two weeks to review the documents and notify Mr. Khan of any deficiencies with his certification translations. However, he failed to do so, and by doing so, failed to provide Mr. Khan fair notice and opportunity to cure any deficiencies. Now, Your Honor, the government argues that the IJA rested their decision when they did not rest on the certification translations and that the IJA nevertheless considered them. However, this is simply not supported by the record. The IJA made clear in this case what he marked for identification only and what he admitted into evidence. I guess, though, from the perspective of the due process violation that you're alleging, is that a meaningful distinction between formally marking them, but not necessarily marking them, but at the same time actually considering them? Your Honor, I'm looking at the entire record as a whole, and I'm coupling the fact that the IJA specifically said that he would mark these evidence for identification only and then went on to discuss why he refused to consider these documents. Mr. Muhammad Tariq's letter for the purpose that it did not corroborate the shooting and Mr. Khan's mother for the fact that Mr. Khan had failed to make his mother available for cross-examination at the hearing, despite the fact that the IJA never even inquired as to the possibility that Mr. Khan could make his mother available via telephone or video conference, and for the second reason I've already mentioned, that Mr. Khan has shown to be, quote, undeserving of the benefit of the doubt as to the probative value, end quote, of his mother's letter. Your Honor, for these reasons, the IJA and the BIA's adverse credibility determinations were not supported by substantial evidence, and we request that the Court reverse or amend the IJA's decision. Thank you. Thank you. Mr. Castro. Good morning, Your Honors. May it please the Court, Jessica Atwood on behalf of Petitioner Mr. Humble Khan. For today's argument, Your Honors, I'd like to focus specifically on Mr. Khan's claim for asylum. Mr. Khan has demonstrated that he experienced past persecution on the basis of his political opinion and that this persecution was at the hands of non-state actors, here a rival political party, the ANP party, and that these members of the ANP party were non-state actors that the Pakistani government were unable and unwilling to control. I'd like to point this Court to the case of Cardozo-Fonseca, where the Supreme Court ruled that even just a 10% likelihood of future harm is enough for a petitioner to meet his burden of establishing an objective, well-founded fear of future persecution. Here, the first instance of persecution occurred in January of 2016. That was when Mr. Khan received the threatening letter from Atala, a regional president of the ANP party, the rival political party. In the letter, Atala states that it is Mr. Khan's last chance and that if he did not specifically cease his activities with his political party, the PTI party, that the ANP would bring consequences to him and that liability would lie on his shoulders. Mr. Khan reasonably perceived this letter to be a threat to his safety and to his life. I look at the case of Kaiser v. Ashcroft, which was another Pakistani case, where this Court ruled that threats alone can be enough for a petitioner to meet their burden for asylum claims in the context of political turmoil and politically motivated violence. Here, that politically motivated violence and turmoil is well documented in the record on pages 329 through 331. Those pages are from the 2016 Human Rights Report on Pakistan that was provided, and in those pages specifically, it details that members of political parties were targets of attack by non-state actors in different parts of Pakistan, specifically in Mr. Khan's province of KP. In the pages, it also details terrorist violence and abuse by non-state actors in Mr. Khan's province of KP. Furthermore, on page 331 specifically, it details an incidence where politicians from the ANP and from the PTI parties were shot in KP and that the attack was politically motivated. So, Ms. Atwood, how do you connect this? This is the State Human Rights Report, is that what you're referring to? Yes. How do you connect that to Mr. Khan himself? Well, I connect the report just to demonstrate the context in which Mr. Khan received the threatening letter, that this is what was occurring in Pakistan at the time that Mr. Khan received the threatening letter from Atullah, and that because of this politically motivated violence and how frequent it happened in Pakistan and specifically in Mr. Khan's province, that he reasonably perceived the letter to be a threat to his safety and to his life. After receiving the letter, Mr. Khan went to authorities and requested help. Not only did the police deny the help that Mr. Khan sought in the record on page 164, the police said that it was not possible to provide Mr. Khan with the assistance that he sought after receiving the threatening letter. Not only did the police deny the help that Mr. Khan sought, they also refused to offer him any other form of assistance or offer him any promise into investigating the letter further. The second incidence of persecution occurred when Mr. Khan's home was shot at in June of 2016. And because of the threatening letter, Mr. Khan reasonably believed that it was members of the ANP party who carried out this attack onto his home in June. Do we know? Would you entertain a question? Yes. On your cat claim. Yes. One of the requirements is that you show not only that he'll be tortured, but be tortured by the government or with the approval of the government. I don't see where in your written brief that you've met that burden. So tell me why should the board, the IJ and the board, believe that the government is going to torture him or that they're going to know about it and sit on the side and applaud? Well, Your Honor, I would like to argue that the government will acquiesce to the torture of Mr. Khan because as I've stated, Mr. Khan went to the authorities not only once after receiving the letter, he went again after his home was shot at and still. There's no question there's a lot of problems. Yes. But that's not the point. We'll give you the point that it's not a safe country. But it has to be unsafe because the government will torture or that it'll know about the torture and acquiesce or approve. So there's got to be more than people are being shot or political parties are against each other, et cetera. And I think that's the issue that I'd like to have you focus on. Okay, Your Honor. I'd like to point out that the country conditions alone can be enough for a petitioner to meet their burden for protection under the Convention Against Torture, and that in the country conditions, specifically on page 329, it also states that there's a culture of lawlessness in Pakistan. Show me where in the country conditions report it says the government will torture or will allow torture with its applause. Well, Your Honor, in our brief, we do cite to a place in the human rights report where it does say that there is no specific legislation against torture under Pakistani law. Furthermore, the report, as I said, specifically lists corruption among lower levels of police as well as indicates that politically motivated violence, especially by non-state actors, has gone unchecked by the Pakistani government. And that is very specifically in the pages of 329 through 331, where it says that a culture of lawlessness has been created based on the violence of non-state actors. And that's the best you got? Yes, Your Honor. Thank you. I do see I'm running out of time. If I may just conclude very quickly, for the reasons discussed today and in our filings, Mr. Khan has demonstrated that he is eligible for relief under asylum because he has demonstrated that he experienced past persecution, thereby creating a rebuttable presumption that he has a well-founded fear of future persecution. Thank you, Your Honors. Thank you, Ms. Atwood. Mr. Hogan, good morning. Good morning. May it please the Court, Brendan Hogan for the government. In the present case, the petition for review should be denied because the agency's decision is supported by substantial evidence. With regards to the first information report, the tampering of the document is certainly material. In his credible fear interview with an asylum officer, in his asylum application, and on his direct testimony, the petitioner in this case was adamant that his house was shot at in June. It was only until a cross-examination when the DHS trial attorney noticed the document had been tampered with. Only then did he reveal that he had changed the date, and he admitted that on both the original and on the translated copy it had additionally said April. And this is certainly material, Your Honors, because it's the only time that anyone tried to physically harm him in his home country, and it's the reason that he departed in the first place. Turning to the next implausibility identified by the immigration judge, in this case, the petitioner couldn't explain why, when he first received a threatening letter from a political rival, he went to an unnamed mayor who he was associated with, and he said he had been threatened, and the mayor did encourage him to go to the police. The immigration judge's concern, however, is that after the police rebuffed him and said, we will not provide you security, he never went back to the mayor who was in charge of this city to say that the police of this city will not protect me, and he had no explanation why he never brought it up again. It was implausible that, in this case, that a rank-and-file party worker would be on stage with a prominent member of his party, and he said it was for this reason that the ANP targeted him for harm, but then the ANP never targeted the mayor who was on stage along with him. He also did not explicitly explain why his neighbor, whose home was also shot at, and who accompanied him to file the police report, why he never provided a letter from that person. And just to remind the panel, while notice generally is required for corroborative documents, that's only when a petitioner is deemed credible. In this case, he was not, and so no notice was required. Turning to the documentary evidence in this case, none of it rehabilitated the petitioner's implausible and inconsistent testimony. The letter from his acquaintance, who was an attorney, I believe, doesn't mention who was trying to harm him. It doesn't even mention the shooting. It just says that people were threatening him. With regards to the letter from the mother, the immigration judge appropriately gave that reduced weight. First and foremost, she wasn't available for cross-examination, and the immigration judge had a valid reason to give it reduced weight. He had already been caught tampering with one document, and therefore he was not going to give him the benefit of the doubt with this document. The remaining documents only talked about his educational background, and I believe they were identification documents. The only other thing in the record was a letter from the police declining to provide him protection. Or, excuse me, his letter to the police asking for protection, but in that case, it's undated, and it doesn't even mention the threatening letter from his rival. And finally, with regards to the due process arguments, while the immigration judge at first did express concern that he didn't have a certificate of translation, there is no harm here, Your Honors. The immigration judge's decision and the board's decision doesn't cite that as a reason for declining to consider those documents. Most of them are addressed in the agency's decision, and with regards to the mother's letter, the immigration judge did not discount that, especially because it's written in English. There was no reason for a certificate. And finally, turning to the petitioner's cat claim, once you set aside the discredited testimony and the discredited documents in this case, all that remains is one small passage in a State Department report saying that a prominent PTI politician was assassinated, and that there's an article that in random street violence, PTI members may have been harmed by other A&P rivals. Under this court's precedent, the petitioner was required to show similarly situated persons are tortured in his home country, and he hasn't done so. Does the panel have any other questions? Thank you. Thank you, counsel. That's brief. Thank you. Mr. Castro, why don't you take a minute to have rebuttal? Actually, why don't you take two minutes, since I know you had requested that, and we kept your co-counsel up there for a little while. Thank you, Your Honor. I would just like to make two brief points on rebuttal. First, on the adverse credibility determination because Mr. Khan had testified that he was able to appear on stage with local party members at local party rallies. Sorry, Your Honor. It was on the failure to report back to his political party that the police had refused to assist him. This was erroneous because the IJ speculated that it would be customary practice for someone in Mr. Khan's position to go back and report back to their political party that the police would have refused to assist them. Secondly, this is analogous with this Court's decision in Singh v. Whitaker, where the Court held that the IJ erred in mischaracterizing the petitioner's testimony to the point where it became implausible that he would fail to report back that he had suffered two separate attacks. Like in Singh, Mr. Khan is now being held not to be credible because he failed to report back to his political party. But unlike in Singh, Mr. Khan did inform his political party that he had received the threatening letter. He just didn't go report back to them that the police had refused to assist him. It's not a question of whether he reported back to his political party. It's the fact that the mayor, who presumably controls the police, he didn't report back to the mayor. It's a little bit different. Your Honor, I still think that Singh v. Whitaker is on point on this because it was a mischaracterization as to the personal relationship that the petitioner had with the local party leader. Just like with Mr. Khan and the mayor. The second point I really wanted to make was to distinguish Yali Wong from this case. In Yali Wong, this Court was able to put aside the corroborating evidence issue because there was a sufficient basis that supported an adverse credibility determination. However, they were able to do that because the adverse credibility determination was supported by substantial evidence because they were able to determine that the Court had considered all relevant evidence and the totality of the circumstances in making that determination. Thank you, Mr. Castro. Thank you, counsel, both, for your arguments. The case is submitted. We want to thank counsel for coming and assisting us with this case. The pro bono program is excellent and working well. Thank you, professor, for your efforts. These cases, we thought, didn't need argument. We were correct, and we thank you in your cooperation. Thank you so much. We always give them a speech. Thank you.
judges: Wallace, Bress, Lasnik